IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.:  6:12-cv-35-ORL-18-GJK

WESTGATE RESORTS, LTD.
a Florida limited partnership

        Plaintiffs,

v.

LAUREN GREENFIELD, an individual;
FRANK EVERS, an individual; and
GREENFIELD/EVERS LLC dba Evergreen Pictures,

        Defendants.
_____/

## OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
## TO AMEND FIRST AMENDED COMPLAINT

      Defendants Lauren Greenfield, Frank Evers, and Greenfield/Evers LLC dba Evergreen

Pictures (collectively, "Defendants") respectfully submit this Opposition to the Motion by Plaintiff

Westgate Resorts Ltd. ("Westgate") for Leave to Amend its First Amended Complaint.  As set

forth in Defendants' pending Motion To Stay Pending Arbitration, *any* dispute regarding the

documentary film that is the subject of this action is encompassed by a binding arbitration

provision signed by Westgate that requires such disputes to be arbitrated in Los Angeles.  Thus,

any further amendment by Westgate would be futile.  Accordingly, Westgate's Motion for leave to

again amend a complaint that had no business being filed in a court in Florida should be denied.

## MEMORANDUM OF POINTS AND AUTHORITY

## I.      PROCEDURAL BACKGROUND

      This action relates to Defendants' highly-acclaimed 2012 documentary film, "The Queen

of Versailles" (the "Documentary") which premiered at the Sundance Film Festival on January 19,

2012.  The Documentary revolves around timeshare mogul David Siegel and his wife, Jackie

Siegel, and how they were building what would be the largest home in America – a 90,000 square

foot home in Orlando.  It shows how the Siegel family coped with the financial aftermath of the

economic crisis of 2008.  The Documentary was filmed with the extensive cooperation and

involvement of the Siegels and David Siegel's company, Westgate, who all signed release forms

that not only release Defendants from the precise claims brought here, but which require any

dispute about the Documentary to be subjected exclusively to arbitration in Los Angeles.

Ignoring his and its contractual obligations under the release, on January 10, 2012, David

A. Siegel and Westgate filed the original Complaint[1] in this matter asserting defamations claims

against the Documentary's director, Lauren Greenfield, its producer Frank Evers and Sundance

Institute, Inc. ("Sundance").  The action related only to press materials for the Documentary.  On

May 3, 2012, Defendants filed a Motion to Stay the Action Pending Arbitration[2], which

demonstrated that both Siegel and Westgate had each signed detailed releases containing binding

arbitration clauses.  In what is now becoming a familiar tactic, rather than address that Motion to

Stay, on May 11, 2012, Westgate simply filed a First Amended Complaint ("FAC").[3]

Recognizing the binding nature of the release he signed, Siegel dropped out as a plaintiff.  In

addition, Sundance was dropped from the action but Evergreen Pictures was added as a defendant.

In addition, Westgate brought new defamation allegations based on the contents of the

Documentary itself and additional press statements.  Those amendments, however, did nothing to

change the fact that Westgate had previously agreed to subject any dispute regarding the

Documentary to arbitration in Los Angeles.  Accordingly, on May 22, 2012 Defendants filed a

---

[1] DE 1.
[2] DE 20.
[3] DE 27.

Motion to Stay on the grounds that the claims asserted in the FAC still must be subjected to arbitration under the release signed by Westgate.[4]

True to form, Westgate now responds with yet another proposed amendment, this time to add two additional defendants, Magnolia Pictures Company ("Magnolia") (which will distribute the Documentary in theaters) and Bravo Media LLC ("Bravo") (which will broadcast the Documentary on television).  Westgate's proposed Second Amended Complaint ("SAC")[5] alleges defamation and false light claims against Defendants based on press statements and contents of the Documentary itself and its trailer.  The proposed SAC further seeks a declaratory judgment that Westgate's release signed by Richard Siegel on the company's behalf is not binding or operative.  As Defendants previously demonstrated in their May 22, 2012 Motion to Stay the Action Pending Arbitration,[6] however, any dispute over the validity of Westgate's release must be resolved by the arbitrator, not by this Court.  Thus, adding these new defendants or any other person or entity involved with the Documentary would be futile because it will not save this case from its proper disposition – an end to it in a federal court in Florida and, should Westgate seek to pursue claims it has already released in writing, an arbitration in Los Angeles, California.  Accordingly, the Motion for Leave To Amend Should be denied.

## II.   <u>ARGUMENT</u>

### A.   **Westgate's Proposed Amendment Is Futile Because This Entire Dispute, Including All Proposed New Claims, Is Encompassed By A Valid and Binding Arbitration Provision**

Fed. R. Civ. P. 15(a)(2) provides that after a party has already made one "matter of course"

---

[4] DE 30.
[5] DE 39-1.
[6] DE 30.

amendment pursuant to Rule 15(a) – as Westgate has done here by filing its FAC – the party must obtain leave of court or the opposing party's written consent to make further amendments to its pleadings.  Although under Rule 15(a)(2) courts should "freely give leave when justice so requires," a district court may deny leave where the proposed amendment would be futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962).  In other words, "[b]ecause justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

This is just such a hopeless case.  Indeed, the Eleventh Circuit has affirmed that a finding of futility is warranted where the claims contained in a proposed amendment are subject to an arbitration agreement entered into by the parties.  *Halliburton & Associates, Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444-445 (11th Cir. 1985).  If the claims offered in a proposed amendment are arbitrable, there is no need for further district court proceedings, and therefore denial of leave to amend is appropriate.  *Id*. at 444.  Courts in other jurisdictions have reached the same conclusion as the Eleventh Circuit.  *See Mills v. Marjam Supply Co*., 2009 U.S. Dist. LEXIS 6760 at *7 (D.N.J.); *Kelly v. MBNA America Bank*, 528 F. Supp. 490, 493 (D. Del. 2008).

Here, just as in *Halliburton*, all of the claims offered in Westgate's proposed amendment are subject to arbitration.  As Defendants have repeatedly demonstrated in their two motions to stay the action pending arbitration,[7] Westgate entered into a detailed release agreement with Greenfield/Evers LLC which, among other things, expressly provided that any dispute regarding the Documentary or materials related it be subjected to binding arbitration in Los Angeles, California.  *See* May 21, 2012 Declaration of Lauren Greenfield, Exh. 1 [DE 31-1] (November 26, 2011 release executed by Richard Siegel on behalf of Westgate).  Under the terms of the release

---

[7] DE 20 and DE 30.

agreement, Westgate expressly waived any and all claims for defamation against Defendants

arising out of the Documentary:

> RELEASE: [Westgate] releases and discharges [Greenfield/Evers LLC dba Evergreen Pictures], its employees, agents, licensees, successors and assigns from any and all claims, demands or causes of actions that [Westgate] may have for libel, defamation, invasion of privacy or right of publicity, infringement of copyright or trademark or violation of any other right arising out of or relating to any of the rights granted herein.

*Id*. Further, Westgate agreed that any disputes relating to the Documentary would be subject to

binding arbitration:

> ARBITRATION:  All disputes under this Release shall be settled pursuant to binding arbitration under the rules of the Independent Film and Television Alliance ("IFTA").  The prevailing party will be entitled to reasonable attorney fees and costs.

*Id.* Richard Siegel, a senior Westgate executive and David Siegel's son, executed the release on

Westgate's behalf.  *See id*. [8]

There is no question that Westgate's proposed claims for defamation and false light fall

within the scope of the Release.  Like Westgate's claims in its FAC and original Complaint, these

new claims are based on the contents of the Documentary itself and related press materials, and

are brought against Greenfield/Evers LLC dba Evergreen Pictures and its "employees, agents,

licensees, successors and assigns."  They are clearly encompassed by the arbitration provision of

the Release, and accordingly, it would be futile for Westgate to add them.

Likewise, Westgate's proposed claim for declaratory relief with respect to whether the

arbitration clause is operative and binding on Westgate is also futile because, as Defendants have

---

[8] Although Westgate asserts in the FAC that Richard Siegel was not authorized to sign a release on behalf of Westgate, Richard Siegel just submitted a declaration under penalty of perjury in connection with Westgate's Opposition to the Motion To Stay (DE 43-2) in which Richard Siegel admits that: he had signed numerous releases for the Documentary (¶¶2-4); that he is a Vice President for Westgate's marketing arm (¶8); that he regularly "negotiate[s] and sign[s] different types" of agreements for this Westgate entity, including "location agreements" (¶11); and that he signed the Release at issue here (¶7).  Although he now contends that he was purportedly signing it on his personal behalf and not on behalf of Westgate and that the words "Westgate Resorts" was added later, that argument is absurd, particularly in light of the fact that the Release specifically states that the signor is signing on behalf of "Company."  DE 43-2.  Indeed, the Release uses the words "Company" or "company-related events" or "Company Activities" ***eleven times***.  *Id.*

already set forth in their May 22, 2012 Motion to Stay the Action Pending Arbitration,[9] under both the Federal Arbitration Act ("FAA") and Florida arbitration law, any dispute regarding the validity of the Release must also be resolved by the arbitrator, not by this Court.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446 (2005) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.");  *John B. Goodman Ltd. Partnership v. THF Construction, Inc*., 321 F.3d 1094, 1098 (11th Cir. 2003) ("A challenge to the validity or enforceability of a contract generally, as distinguished from a challenge to the validity of the arbitration clause specifically, is subject to arbitration, under both the Florida Arbitration Code and the FAA.").  Accordingly, this claim too is subject to arbitration.

Because all of Westgate's claims in its proposed SAC are subject to arbitration, the amendment is futile and the Court should deny Westgate's motion.

**B.      Although David Siegel Is No Longer A Plaintiff, He Is Still Directing This Lawsuit And His Release Also Compels That The Motion To Amend Be Denied**

After Defendants brought their first motion to stay, David Siegel finally acknowledged the binding nature of the release that he signed and dropped out of this meritless action as a plaintiff. However, he is gone in name only – Siegel is still the primary instigator of this action, now using his privately-owned company Westgate as the weapon, to punish Defendants for their protected speech.  The release that he signed provides, in part:

> I and my representatives, heirs, successors and assigns hereby absolutely, unconditionally and forever release and discharge Producer, G/E, Producer's affiliates, licensees, successors and assigns, and the employees, shareholders, directors, officers, agents and representatives of each of the foregoing (collectively, "Released Parties"), from any and all claims, demands, controversies, causes of action, damages, rights, liabilities and obligations whatsoever (including, without limitation, any defamation claim and/or claim

---

[9] DE 30 at 14-15.

that such use invades any right of privacy and/or publicity) ("Claims"), arising directly or indirectly out of or in connection with the Program and/or the use of my likeness.

May 2, 2012 Declaration of Lauren Greenfield, Exh. 2 [DE 26-2] (August 16, 2009 Appearance Release executed by David Siegel).  Under the terms of the Appearance Release, Siegel further agreed that all disputes would be resolved exclusively through arbitration in Los Angeles:

> I agree that any and all disputes or controversies arising under this release or any of its terms shall be resolved exclusively by binding arbitration before a single, neutral arbitrator, to be conducted under the auspices of the American Arbitration Association, under its Commercial Arbitration Rules, through its Los Angeles, California office; provided, however, that I agree that my remedies for any breach of this release by Producer or others will be limited to damages and in no event will I be entitled to rescind this agreement or to seek injunctive or any other equitable relief.

*Id.*  Here, it is transparent that Siegel is using his company Westgate to attempt to circumvent his legal obligations under the Appearance Release.  Westgate *is* David Siegel.  Indeed, in his Declaration he submitted in Opposition to the Motion to Stay (DE 43-1), David Siegel acknowledges that he is the founder, President, Chief Executive Officer and sole Director of Westgate.  He further admits that he signed the Appearance Release, which was binding on not only David Siegel, but his "representatives" as well.  That Appearance Release, which nobody contends there is any issue at all about its validity, binds Westgate as well and compels that this matter be sent to arbitration in Los Angeles.  The Court should put an end to Siegel and Westgate's meritless pursuit by compelling them to resolve their claims in arbitration, as Siegel and Westgate agreed to do under the terms of the releases they executed.

## III.    **CONCLUSION**

This Court has before it a Motion to Stay pending arbitration.  It is that Motion that should be granted, which will end this litigation in this Court and render Westgate's Motion to Amend moot.  Siegel and Westgate are not rubes.  They knew what they were signing and they knew it meant that if they had any dispute regarding the Documentary, the only forum to properly present

that dispute was a private arbitration in Los Angeles.  They also know what they are doing now – hassling filmmakers for a work fully protected by the First Amendment and for which Siegel and Westgate have already released all claims.  Siegel fully cooperated with the filmmakers for years, and instructed his employees and staff to support the filmmaking process, thus fully permitting his life to be the subject of the film.  Westgate (directed solely by Siegel) has no valid claims, but this Court should do what Westgate and Siegel agreed in writing would be done on that issue:   let an arbitrator in Los Angeles decide it.  For the above reasons, Westgate's proposed amendment is futile and Defendants respectfully request that the Court deny Westgate's Motion for Leave to Amend the FAC.

DATED:  June 29, 2012                                  Respectfully submitted,


                                                       By: _____
                                                       Lincoln D. Bandlow


Lincoln D. Bandlow (*pro hac vice*)              Richard Wolfe (FBN 355607)
lbandlow@lathropgage.com                         richard@wolfelawmiami.com
LATHROP & GAGE LLP                               WOLFE LAW MIAMI, PA
1888 Century Park East, Suite 1000               175 SW 7th Street, PH2410
Los Angeles, California 90067                     Miami, FL 33130
Tel: (310) 789-4600                              Tel: (305) 384-7370
Fax: (310) 789-4601                              Fax: (305) 384-7371

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification per service list attached on this 29th day of June, 2012; and a copy was furnished via electronic mail delivery to Richard W. Epstein, Esq. (Richard.Epstein@gmlaw.com), Greenspoon Marder, P.A., 200 East Broward Blvd., Suite 1500, Fort Lauderdale, FL 33301.

                                          _____
                                          Lincoln D. Bandlow