UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:12-cv-35-ORL-22GJK

-------------------------------------------------------------------------x
WESTGATE RESORTS, LTD.,
a Florida limited partnership,

                Plaintiff,

    -against-

LAUREN GREENFIELD, an individual,
FRANK EVERS, an individual, and
GREENFIELD/EVERS LLC d/b/a Evergreen Pictures,

                Defendants.
-------------------------------------------------------------------------x

### DEFENDANTS' APPLICATION, BY MOTION, TO CONFIRM AN ARBITRATION AWARD PURSUANT TO 9 U.S.C. §§ 9 AND 13

The present action was stayed by prior order of this Court, dated January 24, 2013, pending arbitration between the parties pursuant to a written arbitration clause of a release. [DE 81.][1] That written arbitration clause required binding arbitration of all disputes under the release pursuant to the rules of the Independent Film & Television Alliance ("IFTA").

That arbitration has now taken place before an arbitrator with the IFTA -- the same claims pled in the present action have now been arbitrated by the same parties to the present action and a final award has been rendered. That award is in favor of Defendants. It should be confirmed and reduced to a judgment.

---

[1] The entire procedural history is a part of the electronic docket, of which the Court may take judicial notice, many facts are recited in the Court's 1-24-13 Order, and they are also more fully set forth in the accompanying declaration of Joseph Johnson, Esq., executed on April 21, 2014 ("Johnson Decl."), in support of the within application by motion.

**RELIEF REQUESTED**

Defendants Lauren Greenfield, Frank Evers, and Greenfield/Evers LLC file the within application seeking, by motion, an order, pursuant to Title 9, United States Code, Sections 9 and 13:

(1) Confirming the award of the arbitrator in the IFTA arbitration proceeding between them and Plaintiff Westgate Resorts, Ltd., dated March 12, 2014, duly delivered to the respective parties in accordance with the Rules of the IFTA, before whom the arbitration took place;

(2) Directing the entry of judgment for $750,000; and

(3) Granting such other and further relief as may be appropriate.

**PROCEDURAL HISTORY**

On or about January 10, 2012, Plaintiff ("Westgate") and David Siegel sued Defendants Lauren Greenfield, Frank Evers, and Greenfield/Evers LLC (the "Filmmakers") in the present action for, *inter alia*, defamation in connection with the documentary film "The Queen of Versailles". [DE 1.] The film featured David Siegel and his wife Jackie Siegel and aspects of Westgate, his large, privately-owned time-share business.

At the time the present action was commenced, the film was about to premiere at the Sundance film festival. [Johnson Decl. at 3.] Both Westgate and David Siegel sued the Filmmakers and Sundance Institute over a Sundance press release for The Queen of Versailles posted on the internet. [DE 1.] They eventually amended the complaint to include a claim about the content of the film itself. [DE 27.][2]

---

[2] David Siegel removed himself and Sundance Institute from the caption of the amended complaint.

2

The Filmmakers moved for a stay of the present action pursuant to, *inter alia*, the Federal Arbitration Act, 9 U.S.C. § 3 *et seq.* (the "FAA"), based on the written release agreement (the "Release") signed by Westgate containing an arbitration provision. [DE 30.] Westgate opposed, contending that Richard Siegel, the signatory for Westgate (son of David Siegel), had no authority to bind it despite having signed it. [DE 43.]

This Court held an evidentiary hearing on December 3, 2012 concerning the issues raised by the Filmmakers' stay motion and Westgate's opposition. [DE 48, 75.] It issued its ruling on January 24, 2013. [DE 81.] This Court found that (a) David Siegel had the authority to appoint Richard Siegel as an agent of Westgate, (b) David did so with respect to the filming of Westgate-related shoots, (c) Richard Siegel accepted that undertaking, (d) Westgate had control over Richard Siegel's actions, and (e) Richard Siegel's act in signing the Release was incidental to his filmmaking authority, rendering the arbitration clause contained therein enforceable. In so ruling, this Court rejected the testimony of David Siegel and Richard Siegel, entirely, on these issues. This Court ordered the present action stayed pending arbitration. [DE 81.]

## THE ARBITRATION AND THE AWARD

The Release provided for binding arbitration of all disputes under it pursuant to the rules of the IFTA. [Ex. 1 to Johnson Decl.] Given this and the Court's 1-24-13 ruling, Westgate immediately filed before the IFTA the very same claims it has pled in the present action. [Johnson Decl. at 10.] The Release also provided that "[t]he prevailing party will be entitled to reasonable attorney fees and costs." [Ex. 1.] So the Filmmakers filed a counterclaim seeking such fees and costs. [Johnson Decl. at 13.]

3

The IFTA arbitration hearing was held on July 15, 16, 17 and 18, 2013. [Id. at 15.] Eleven different witnesses testified at the hearing. [Id.] The same lawyers who represent the parties in the present action also conducted the arbitration before the IFTA. [Id.]

The written award of the IFTA arbitrator was transmitted to the parties via email on March 13, 2014 (the "Award"). [Ex. 3 to Johnson Decl.] It was rendered in a timely fashion (in accordance with the IFTA arbitration rules) without any extensions of time within which to render the Award. [Johnson Decl. at 16-17.][3]

The Filmmakers won the arbitration. [Ex. 3 to Johnson Decl.]. The arbitrator denied Westgate's two defamation claims, on the merits, based on a variety of dispositive grounds. As to the content of The Queen of Versailles, the arbitrator found that none of it was false. [Award at 5-6.] He noted that a great extent of the crisis for Westgate that was depicted in the film was derived from the words of David, Jackie and Richard Siegel themselves. [Id. at 6.][4] The arbitrator also found that Westgate had failed to prove any damages, noting that it had thrived, financially, as never before since the film's release. [Id. at 3, 6.]

As to a press release for The Queen of Versailles about which Westgate complained, the arbitrator found that the Filmmakers were not responsible for its creation, were unaware that it had been posted on their website, and immediately took steps to remove it. [Id. at 6.] He also found no evidence that the Filmmakers communicated it to any third person who understood it to be defamatory as to Westgate, and found no evidence of damages whatsoever. [Id.] Finally, the arbitrator found that "the evidence did not remotely establish" the malice required in respect of a

---

[3] Pursuant to IFTA arbitration rule 12.4, the parties had thirty days within which to request the arbitrator to correct any perceived errors in the Award. [Ex. 2 to Johnson Decl.] Those thirty days have elapsed without any such request (Johnson Decl. at 22), and the Award is now final.

[4] Both the arbitrator and this Court noted in particular that David Siegel, himself, described the situation as a "riches to rags story." [DE 81 at 3.]

4

public figure. [Id. at 6-7.]

The arbitrator awarded the Filmmakers $750,000 in reasonable attorneys' fees, pursuant to the "prevailing party" attorneys' fee clause in the Release. [Id. at 7-10.] The Award remains unsatisfied as of the date of the filing of this application. [Johnson Decl. at 23.]

As is more fully set forth in the below memorandum of legal authorities, the Filmmakers are entitled to an order confirming the arbitration award and directing entry of judgment thereon. It is respectfully requested that the within motion be granted.

## MEMORANDUM OF LEGAL AUTHORITIES IN SUPPORT

The Filmmakers have submitted the basic proof required by the FAA to warrant confirmation of the Award. Given the strong statutory policy in favor of enforcement of arbitration agreements, the Award should be confirmed and the Court should direct the entry of judgment in favor of the Filmmakers.

An application for an order confirming an arbitration award should "get streamlined treatment as a motion…" which should be granted unless the award is vacated, modified or corrected. Hall St. Assocs. v. Mattel, 552 U.S. 576, 582 (2008). FAA § 13 sets forth the papers which are required to be filed at the time an order confirming an arbitration award is filed with the clerk for the entry of judgment thereon. It requires:

(a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.

(b) The award.

(c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

The Filmmakers have complied with the foregoing requirements. The Release has been

5

provided, which contains the arbitration clause requiring "binding arbitration under the rules of the Independent Film & Television Alliance ("IFTA")." [Ex. 1.] The rules of the IFTA, in turn, provide for arbitration before a single arbitrator and set forth the method of naming him or her. Those rules were complied with and a single arbitrator was named, who presided over the hearing and rendered the Award. [Johnson Decl. at 12-18.] No court had to appoint an arbitrator pursuant to FAA § 5 in the first instance, so that there was no "additional arbitrator" appointed within the intendment of FAA § 13.

The Filmmakers have established that the Award was timely rendered under the IFTA arbitration rules, there was no extension of time within which to make the Award, and it is now final. [Johnson Decl. at 16-22; Ex. 2, IFTA Arb. Rules 12 & 13.] A copy of the Award has been provided, and the papers which comprise this application will be provided to the clerk at the time of entry of judgment. This is all the proof that is required in order for this Court to confirm the Award.

Nor are there any other issues preventing entry of an order, at this time, confirming the Award or judgment thereon. Any issues Westgate could conceivably raise would be unavailing.

This application is timely and is not premature. FAA § 9 provides for a period of one year within which to apply for an order confirming an award. The Award was rendered on March 13, 2014, so that this application has been made well within that time period.

While Westgate has a period of three months within which to apply for an order vacating the Award under FAA § 12, that is of no moment given that the Filmmakers have moved to confirm. Westgate must oppose the within application -- with whatever purportedly substantive objections it may have supporting vacatur -- in the time frame afforded it by the local rules of the Middle District of Florida.

6

The caselaw under the FAA establishes that a motion to confirm made within three months of the award is not premature and "[a]s we understand the statute a motion to confirm puts the other party to his objections. He cannot idly stand by, allow the award to be confirmed and judgment thereon entered, and then move to vacate the award just as though no judgment existed." The Hartbridge, 57 F.2d 672, 673 (2nd Cir. 1932)(finding that a motion to confirm made within three months of the award was not premature); accord, Kanuth v. Prescott, Ball & Turben, 1990 WL 91579 (D.D.C. 1990); RPJ Energy Fund Mgmt. v. Collins, 552 F.Supp. 946, 950 (D.MN. 1982); see also, PMS Distrib. Co. v. Huber & Suhner, A.G., 981 F.2d 1259, 1992 WL 356997 *1 (9th Cir. 1992)(filing a motion to vacate, rather than filing opposition to a first-filed motion to confirm, both made within three months, was improper). Westgate has now been put to its objections, if any.

This Court has subject matter jurisdiction. Westgate commenced the present action against the Filmmakers, alleging subject matter jurisdiction based on diversity of jurisdiction. [DE 27 at ¶¶ 1-3.] In the within application, the Filmmakers have confirmed that such subject matter jurisdiction still exists under 28 U.S.C. § 1332. [Johnson Decl. at 26-32.]

The venue in this Court is also proper. The U.S. Supreme Court has expressly held that FAA §§ 9, 10 and 11 -- permitting confirmation, vacatur, modification or correction of an arbitration award in the U.S. court in the district wherein the award was made -- are only permissive venue provisions. Cortez Byrd Chips v. Bill Harbert Constr. Co., 529 U.S. 193 (2000). The FAA does not preclude the present motion to confirm from being brought outside the district where the arbitration award was made.

7

Indeed, the Supreme Court expressly approved of the very circumstance presented here, to wit:

> A restrictive interpretation would also place § 3 and §§ 9–11 of the FAA in needless tension, which could be resolved only by disrupting existing precedent of this Court. Section 3 provides that any court in which an action "referable to arbitration under an agreement in writing" is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. If an arbitration were then held outside the district of that litigation, under a restrictive reading of §§ 9–11 a subsequent proceeding to confirm, modify, or set aside the arbitration award could not be brought in the district of the original litigation (unless that also happened to be the chosen venue in a forum selection agreement). We have, however, previously held that the court with the power to stay the action under § 3 has the further power to confirm any ensuing arbitration award. Id. at 201-02.

This Court had the power to stay the present action, brought by Westgate, pending arbitration in accordance with the terms of the parties agreement, and it retains the power to confirm the resultant award. See also, GS Equities, Ltd. v. Blair Ryan Co., 2011 WL 3278909 *1-2 (S.D.N.Y. 2011)(after the District Court stayed the original action the plaintiff brought -- despite a contractual provision requiring arbitration in another district -- pending arbitration, the same District Court then sustained venue on motions to confirm and vacate the resultant arbitration award in the same action).

Lastly, there can be no serious contention by Westgate that it did not consent to judicial confirmation of any arbitral award. The Release provides for "binding arbitration under the rules of the [IFTA]." IFTA arbitration rule 12.5, in turn, expressly permits any party to seek confirmation with a court having jurisdiction. [Ex. 2 to Johnson Decl.] As in Idea Nuova, Inc. v. GM Licensing Group, 617 F.3d 177, 180-82 (2nd Cir. 2010), confirmation under FAA § 9 is appropriate because the rules pursuant to which the parties agreed to arbitrate have provided that consent. See also, Washington Mut. Bank v. American Fin. Network, 414 F.Supp.2d 1155, 1156 Fn 4 (S.D. Fla. 2006)(the arbitration rules provided for consent to judgment).

8

In addition to the IFTA arbitration rules' express consent to judgment, Westgate, itself, ultimately demanded arbitration and fully participated in the arbitration process. Compare, Booth v. Hume Publ'g, 902 F.2d 925, 930 (11th Cir. 1990)(arbitration agreement stated it would be "final and binding"; party demanded and participated in the arbitration; it was deemed to have consented to authority of district court to confirm award under FAA § 9). In view of these facts, it is clear that Westgate has consented to the entry of a judgment upon the Award by a court, and the Filmmakers may avail themselves of FAA § 9 for that purpose.

## CONCLUSION

In view of the foregoing, it is respectfully requested that the Application of Defendants Lauren Greenfield, Frank Evers, and Greenfield/Evers LLC be granted, and an order issued confirming the arbitration award and directing the entry of judgment for $750,000; together with such other and further relief as may be warranted and appropriate.

Dated: April 21, 2014

/s/ Martin Garbus
Martin Garbus
NY Bar No. 1499987
mgarbus@evw.com
*(admitted pro hac vice)*

/s/ Joseph Johnson
Joseph Johnson
NY Bar No. 2653210
jjohnson@evw.com
*(admitted pro hac vice)*

EATON & VAN WINKLE LLP
3 Park Ave.
New York, NY 10016
P: 212.779-9910
F: 212.779-9928

*Attorneys for Defendants*

/s/ Richard C. Wolfe
Richard C. Wolfe
Florida Bar No. 355607

WOLFE LAW MIAMI, P.A.
175 Southwest 7 Street, Suite 2410
Miami, Florida 33130
rwolfe@wolfelawmiami.com
P: 305.384.7370
F: 305.384.7371

*Attorney for Defendants*